SOUTHERN RICE SALES COMPANY, Respondent, Appellant, *v.* FEDERAL EXPORT CORPORATION, Appellant, Respondent.

First Department, July 6, 1925.

**Sales — action to recover damages for failure of seller to deliver — alleged sale of rice was made through broker c. i. f. New York — evidence shows authority was to sell c. i. f. Havana — verdict that broker had authority to sell c. i. f. New York against weight of evidence.**

In an action by a buyer to recover damages based on the seller's refusal to deliver rice purchased through a broker c. i. f. New York, the evidence establishes that the authority of the broker was to sell the rice c. i. f. Havana, and the verdict in favor of the plaintiff on the theory that the broker had authority to sell the rice c. i. f. New York, is against the weight of evidence.

APPEAL by the defendant, Federal Export Corporation, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 8th day of June, 1923, upon the decision of the court rendered after a trial at the New York Trial Term before the court without a jury, pursuant to a stipulation therefor following the withdrawal of a juror.

Appeal by the plaintiff, Southern Rice Sales Company, from such judgment on the ground that the damages awarded are inadequate and insufficient, due to the adoption of an alleged erroneous measure of damages.

*Stein & Salant* [*Louis Salant* of counsel; *Joseph J. Cunningham* and *Stanley B. Ecker* with him on the brief], for the plaintiff.

*Davis, Wagner, Heater & Holton* [*Arnold L. Davis* of counsel; *Charles R. Coulter* and *George F. Losche* with him on the brief], for the defendant.

FINCH, J.:

The action was brought to recover damages for the defendant's failure to deliver 1,000 tons of rice alleged to have been sold to the plaintiff by one Lewis, a broker, on behalf of the defendant, at six

dollars and fifty cents per 100 pounds c. i. f. New York. The defendant denied that Lewis had authority to sell the rice c. i. f. New York, but contended that his authority was to sell the same c. i. f. Havana, and the principal question in the case is whether Lewis had the authority claimed by the plaintiff.

On behalf of the plaintiff is the testimony of the broker Lewis, that on May 9, 1919, a Friday afternoon, he called on the defendant and interviewed Mr. Skinner, who at that time was the defendant's vice-president and export manager, inquired what they had to sell and was informed they had 1,000 tons of Siam Usual rice that he could offer at six dollars and fifty cents c. i. f. Havana; that Lewis thereupon said to Skinner that he did not think he could sell the rice c. i. f. Havana, but felt sure he could sell it c. i. f. New York, whereupon Skinner told him that he could have the 1,000 tons of rice at six dollars and fifty cents c. i. f. New York; that Lewis then inquired the position of the rice, that is, whether the rice was at that time in the Orient or was in transit from the Orient to New York, and was referred to one Green, Skinner's assistant, and arranged with Green to call the following morning in order to ascertain the position of the rice; that the following morning he called on Green and was told the rice was May shipment from the Orient and that he was authorized to sell the same c. i. f. New York; that Green handed him a memorandum pad upon which he wrote down the terms of sale as given him by Green. This memorandum was introduced in evidence and will be referred to hereinafter. Lewis further testified that he handed the memorandum to Green, who read the same and said: "That is all right."

On behalf of the defendant, Skinner testified: "Mr. Lewis came in my office very close to closing time, in the afternoon, and discussed with me various food products, which he knew we were handling, and asked me if we had anything for sale. After some discussion I finally said that we had one thousand tons of rice which was for sale. He asked me on what basis we would sell it, and I stated to him that we would sell it at $6\frac{1}{2}$ cents c. i. f. Havana to any reputable house. He said that there would probably be some difficulty in his selling it c. i. f. Havana, and wanted to know if I could make it c. i. f. New York. I stated that I could not sell it any other way than that which we owned it, but as the rice was April-May shipment, there was a possibility that it had not yet been shipped, and due to the fact that the freight rate from the Orient to Cuba and to New York was identical at that time, the seller might be willing to change the destination, providing a sale was made, and the buyer required re-delivery, in which case we would do everything we could to make that change."

Green testified on behalf of the defendant that Lewis asked him if he could offer him the rice c. i. f. New York, and that he told him he could not; that the defendant did not have it that way, but had it c. i. f. Havana. Green further testified: " He asked me a second time if I could not offer it c. i. f. New York, and I told him no, to go out and try to sell the rice c. i. f. Havana, and that we would leave the question of c. i. f. New York for future decision, depending on whether or not he was able to develop a client who wanted it c. i. f. New York. I told him that we had it c. i. f. Havana, and that was the only way we had it, and that was the only way we could offer it."

On cross-examination Lewis qualified his testimony by the admission that although he had been authorized to sell the rice c. i. f. New York, he had been expressly asked to try first to sell it c. i. f. Havana and had told Green he thought he might be able to sell it c. i. f. Havana, and further testified that although he knew the defendant desired the rice sold c. i. f. Havana rather than New York: " I went out to sell the goods c. i. f. New York, knowing that I had a purchaser, a prospective purchaser for one thousand tons of Siam Usual rice, that wanted to buy the goods c. i. f. New York." It thus appears that Lewis knew that the plaintiff was in the market for rice c. i. f. New York, before he saw the defendant, with whom he had had no previous business dealings. Lewis further admitted that at the time he was asked by the defendant to try to sell the rice c. i. f. Havana rather than New York, and had agreed to do so, he had a mental reservation that he would not make any such effort. He further testified that he went out and within ten minutes had sold the rice over the telephone to the plaintiff c. i. f. New York. Lewis testified he then telephoned Green to that effect. Green denies that Lewis stated the rice had been sold c. i. f. New York, but merely stated the rice had been sold. Lewis then made out and mailed to the plaintiff and to the defendant duplicate sales memoranda of the contract of sale. Having stated in this memoranda that 1,000 tons of rice had been sold at six dollars and fifty cents, he followed this up within half an hour by a second memoranda of sale calling attention to the fact that the price was six dollars and fifty cents per 100 pounds. He then called at the office of the defendant to see Mr. Green, who was not in. Although he saw Mr. Skinner, he testified he did not mention to him the fact that he had sold 1,000 tons of rice to the plaintiff.

Upon receiving the memoranda of sale the following Monday morning, the defendant immediately returned the same to Lewis, upon the ground that the rice had not been sold in accordance with the authority given to the plaintiff. Green testified that upon

First Department, July, 1925. [Vol. 213

Lewis coming into the defendant's office on Monday, Green asked him to take the matter up with his buyer and have it straightened out, as the defendant did not want to be put in a compromising position by being called upon to deliver rice that it did not own; that the only rice the defendant had was c. i. f. Havana. Lewis said there was not anything for him to straighten out; that he had sold the goods as they had been given him to sell, namely, c. i. f. New York. Green then telephoned Mr. Ross, the plaintiff's president, and told him that Lewis had made a mistake in offering the rice c. i. f. New York; that the defendant had no rice c. i. f. New York; that the only rice it had was c. i. f. Havana, and consequently the defendant could not deliver any rice c. i. f. New York; that the defendant would try to have the rice diverted if it had not already left the Orient, so as to make delivery to him at New York, but could not bind itself to do that; that the only way the defendant could bind itself was the way it owned the rice, which was c. i. f. Havana. Green further testified that Ross said he had heard Lewis' story and was inclined to believe Lewis was right and that he was not interested in the proposition made by Green. Green thereupon conferred with Skinner and a letter was written by the defendant, dated May 13, 1919, offering to deliver the rice c. i. f. Havana and giving the plaintiff until five o'clock that evening to accept. Green then went to the plaintiff's office and interviewed Mr. Ross. He testified that he repeated to Mr. Ross what he had told him over the telephone, but that Ross said he had bought the rice c. i. f. New York and was going to insist upon delivery in New York, whereupon Green left with Ross the aforesaid letter, calling the attention of Ross to the fact that it contained a limitation of time within which to accept the offer. The following morning the plaintiff notified the defendant that delivery would be accepted c. i. f. Havana. The defendant, however, replied that the acceptance was too late, since the offer to deliver was limited by the aforesaid letter. In this connection Ross testified that he had informed Green that he could not decide whether to accept the defendant's offer until he had cabled to Havana, and that he could not do so and get a reply until the following morning, and that Green said: " Well, go ahead, send the cable." Green denies this or that there was anything said about cabling Havana. The fact remains, however, that the defendant, through Green, left with the plaintiff a written limited offer to deliver the rice c. i. f. Havana if accepted by five o'clock that day.

We are of the opinion that the finding that the broker Lewis was authorized to sell the rice c. i. f. New York is against the weight of the evidence, for the following reasons: It clearly appears throughout

the record that the only rice owned by the defendant was rice which it had purchased for delivery in Havana, and a reading of this record fails to disclose any reason why the defendant would have authorized the sale of rice for delivery in New York without knowing whether or not they could perform the contract; in other words, that they would sell what they did not own. No claim is made that the sale purported to be what is known as a short sale. Notwithstanding the defendant claimed the sale of the rice was outside the authority of the broker, they were still willing to deliver the rice they owned, namely, rice c. i. f. Havana, at a time when the market was considerably higher than the price at which the rice had been offered to the plaintiff. This demonstrates that the defendant was not seeking to avoid the contract which Lewis had made on its behalf because there had been an advance in the market, but that it was willing to deliver what it had by offering the plaintiff an opportunity to adopt the contract which it claimed it had authorized Lewis to make, limiting only the time in which this might be done, and which was a reasonable limitation in the face of an obviously advancing market.

Lewis admits that at the time he was discussing the sale of the rice with the defendant he had a customer for 1,000 tons of rice c. i. f. New York, and that he intended to offer this rice to said customer c. i. f. New York without making any effort to sell the same c. i. f. Havana, although he admits he knew the defendant had the rice in Havana and wanted it sold c. i. f. Havana. Also, plaintiff concededly was willing to take the rice c. i. f. Havana, which would not have been likely had it felt confidence in the existence of a binding contract c. i. f. New York.

As noted, at the time of this discussion, Lewis wrote on a pad the terms of sale given him by the defendant's representative Green. There is a sharp conflict between the testimony of Green and Lewis as to whether Green was shown this memorandum or whether all of its contents were read back by Lewis. Although this memorandum was the keystone of Lewis' testimony, he was unable to explain the obvious fact that two pencils were used in these few lines of writing, except by the speculation that perhaps a pencil point had broken. The appearance of the memorandum is such as to cast doubt on Lewis' story that he handed the same to Green to read over, but when coupled with the admission of Lewis that he was deliberately deceiving Green by agreeing to sell the rice in the first instance c. i. f. Havana when he never had any intention of so doing, creates an atmosphere of bad faith which colors the whole case.

42

The further circumstance of the meticulous care of Lewis in correcting the sales memoranda to read six dollars and fifty cents per 100 pounds, when ordinarily there could be no question but that the price quoted would refer to the rate per 100 pounds and not to the entire quantity or to the price per ton, coupled with the fact that Lewis, according to his own testimony, omitted to mention to Skinner that the rice had been sold, although he saw him shortly after the transaction had been consummated, and Skinner was the one whom he had originally seen in connection with the matter and who had authorized the sale of this large quantity of rice, lead irresistibly to the conclusion that Lewis was determined to " make a record," so as to create a liability against the defendant for the sale of the rice, which would satisfy the Statute of Frauds,* requiring all the terms of a definite contract to be in writing. All the foregoing considerations so weaken the uncorroborated testimony of Lewis as to leave it overborne by the weight of the testimony on the part of the defendant.

We, therefore, are of the opinion that the judgment should be reversed as against the weight of the evidence, and a new trial granted, with costs to the defendant, appellant, to abide the event.

CLARKE, P. J., MERRELL, MARTIN and BURR, JJ., concur.

Judgment reversed and new trial ordered, with costs to the defendant, appellant, to abide the event.